**Harold LEWIS, Plaintiff,**

v.

**AETNA LIFE INSURANCE COMPANY, and Kmart Corporation, Defendants.**

**No. Civ.A. 97–1230–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 11, 1998.

---

Victor Michael Glasberg, Alexandria, VA, for Lewis.

Ronald S. Cooper, Washington, DC, John C. Fox, Phyllis E. Andes, Fenwick & West, Washington, DC, for Aetna.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

### I.

Plaintiff Harold Lewis has suffered from severe depression since 1979. In 1984, Lewis obtained employment with defendant Kmart Corporation ("Kmart"). In 1987, by virtue of his employment, he was offered and accepted an employee disability benefit plan issued by defendant Aetna Life Insurance Company ("Aetna"). The plan provided that physical disabilities would be covered through age sixty-five, but terminated benefits for mental disabilities after twenty-four months of coverage.

In March of 1995, plaintiff's depression worsened, and he became unable to work. At first, he went on medical leave under Kmart's leave program. However, by September of 1995, he began receiving monthly long-term disability benefit payments under the Aetna plan. On October 2, 1995, Aetna sent plaintiff a letter confirming his entitlement to benefits. *See* Kmart's Ex. M. Although the letter referenced the different periods of coverage applied to physical and mental conditions, it did not specifically classify plaintiff's condition as "mental" in nature. However, by the Spring of 1996, plaintiff had learned that Aetna had classified his disability as mental. *See* Plaintiff's Dep. at 50–51, 53 (Aetna Ex. C). Plaintiff's benefits were terminated on September 18, 1997, two years after he first began receiving them.

On July 2, 1996, more than a year before the termination of his benefits, plaintiff filed a charge of disability discrimination against defendant Kmart with the EEOC. *See* (EEOC Charge Aetna Ex. D.). In the charge, plaintiff argued that he had been subjected to discrimination on the basis of a mental disability because he was given less disability insurance coverage than a person with a physical disability. Plaintiff identified June 17, 1996 as the latest date on which the alleged discrimination had occurred. A Right to Sue letter issued and plaintiff filed a complaint in this court on August 6, 1997, alleging that defendant Kmart violated his rights under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112, to terms and conditions of employment free from discrimination based on his disability, and that defendant Aetna violated his right under Title III of the ADA, 42 U.S.C. § 12182, to public accommodation free from discrimination based on his disability.

In the motions now before the Court, defendants each seek summary judgment in their favor, arguing that plaintiff's claims are barred both by the relevant statute of limitations and by administrative exhaustion requirements.

## II.

*The Applicable Statute of Limitations*

 Because the ADA does not specify a statute of limitations for claims under either Title I or Title III, district courts must adopt the most analogous state statute of limitations. See 42 U.S.C. § 1988 (1994); *Wilson v. Garcia,* 471 U.S. 261, 266, 268, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The Fourth Circuit has not yet determined which state limitations period governs ADA claims brought in Virginia. However, the Fourth Circuit has held that the Virginia Rights of Persons with Disabilities Act (the "Virginia Act"), Va.Code Ann. § 51.5–40 et seq., provides the most analogous statute of limitations for claims brought under the federal Rehabilitation Act, the predecessor to the ADA. *See Wolsky v. Medical College of Hampton Roads,* 1 F.3d 222, 223 (4th Cir. 1993). The ADA was closely modeled on the Rehabilitation Act and was intended to extend its protections into the private sector. *See e.g., Americans with Disabilities Act of 1989: Sen. Comm. H'gs Before the Committee On Labor and Human Resources, Subcomm. on the Handicapped,* 101st Cong., 189 (May 9, 10, 16 and June 22, 1989); S.Rep. No. 101–116, at 156 (1989). Accordingly, by implication the Fourth Circuit has recognized that an essential similarity also exists between the Virginia Act and the ADA. *See Tyndall v. National Educ. Ctrs., Inc.,* 31 F.3d 209, 216 (4th Cir.1994) (Virginia Act standards for liability follow those of the ADA). Like the ADA and the Rehabilitation Act, the Virginia Act is aimed at preventing disability discrimination both in the terms of employment and in public accommodations. *See* 42 U.S.C. § 12112, 12182(a); 29 U.S.C. § 794; Va.Code Ann. § 51.5–41, 51.5–44. Indeed, the Virginia Act conspicuously relies on both the ADA and the Rehabilitation Act for many of its enforcement provisions. *See* Va. Code Ann. § 51.5–40 (regulations created to implement Virginia Act "shall be consistent, whenever applicable, with regulations imposed under the federal Rehabilitation Act of 1973, as amended, and the federal Americans with Disabilities Act of 1990"). As such, this Court concludes that, as with Rehabilitation Act claims, the Virginia Act is the most analogous state statute for claims brought under the ADA. Plaintiff does not dispute this conclusion. Because the Virginia Act uses a one-year statute of limitations for disability discrimination claims, we conclude that a one-year limitation applies to Lewis' claims. *See* Va.Code Ann. § 51.5–46.

*When the Statute Begins to Run*

 Having determined the appropriate statute of limitations, we next consider when the statute began to run as to plaintiff's claims. Defendants each argue that plaintiff's lawsuit was filed after the statute of limitations had run. Specifically, Kmart argues that the limitations period began to run on plaintiff's claims in 1987, when plaintiff first received notice of the details of his Aetna benefits package. Aetna argues that the limitations period began to run in the Spring of 1996 when plaintiff became aware that Aetna had classified him as suffering from a mental rather than physical disability. Plaintiff responds that the statute of limitations did not begin to run until his claims became ripe for adjudication; that is, not until he was faced with actual and imminent loss of benefits.

 In order for a claim to be ripe, a plaintiff must show that he has suffered an "injury in fact," meaning the "invasion of a legally protected interest that is '(a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical.'" *Northeastern Fla. Contractors v. Jacksonville,* 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). Federal courts lack subject matter jurisdiction over claims that are not ripe. *Id.* Here, plaintiff argues that his injury did not become "actual and imminent" until it became certain that he would require benefits beyond the two-year limit, and that he would be denied such benefits on the basis of his disability. Plaintiff argues, for example, that he might have recovered before the expiration of the two-year limit. Had Lewis recovered before the end of the two-year period, he would not have suffered any pecuniary loss as a result of Aetna's treatment of his disability as "mental" rather than "physical." Indeed, plaintiff supports his argument with evidence that, in the past, his condition

tended to wax and wane, and that during the early months after he went on long-term disability, his doctor expected him to recover well before the expiration of the two-year limit on benefits. *See* Hryvniak 2d Decl. at ¶¶ 2–7; Cobb 2d Decl. at ¶¶ 2, 3. Moreover, plaintiff claims that Aetna's own actuarial data demonstrate that mental conditions tend not to last beyond two years. *See* Plaintiff's Statement of Undisputed Facts at $5. Accordingly, plaintiff argues that his claim did not become ripe until it was inevitable that he would lose benefits as a result of the plan's distinction between mental and physical conditions.

The Supreme Court and the Fourth Circuit appear to have rejected plaintiff's logic. *See Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *English v.. Whitfield,* 858 F.2d 957 (4th Cir.1988); *Martin v. Southwestern Virginia Gas Company,* 135 F.3d 307 (4th Cir.1998). In *Ricks,* a state college denied the plaintiff tenure but gave him a one-year grace period in which to find other employment. *Ricks,* 449 U.S. at 252–55. The plaintiff did not sue immediately, but waited to bring his Title VII and § 1981 action until his employment ended. Finding that the limitations period began to run when the plaintiff received final and definite notice of the allegedly discriminatory decision, rather than when the effects of that decision were felt, the Supreme Court affirmed the dismissal of Ricks' action. *Id.* at 255, 258; *see also English,* 858 F.2d at 961–62.[1]

Similarly, in *English,* a nuclear safety worker was notified that she would be laid off but was given a ninety-day grace period in which to find other employment. Plaintiff waited until the ninety-day period had expired before filing a claim of retaliation with the Department of Labor. *English,* 858 F.2d at 958–60. Attempting to distinguish *Ricks,* English argued that the decision to discharge her was not final until her employment actually ended, because the effects of that decision might never be felt. For example, the

plaintiff argued, she might have found another job before the expiration of the ninety-day period, and never suffered the effects of unemployment. *Id.* at 961. The Fourth Circuit rejected this argument, holding that the plaintiff's ability to avoid the harsh effects of a discriminatory decision was irrelevant to determining whether discrimination had in fact occurred. The court reasoned that there was nothing tentative about the decision to discharge the plaintiff, and that her ability to avoid its effects "would not have erased or made non-actionable" her employer's discriminatory action. *Id.* at 962. Both *Ricks* and *English* are impliedly premised on the recognition that statutes such as Title VII and § 1983 offer injunctive relief as well as damages for acts of discrimination, making a claim viable from the moment a plaintiff becomes aware of a discriminatory act against him.

The application of these cases to the facts before this Court is clear: the one-year limitations period on plaintiff's claims must be deemed to run from the date when it became clearly and unequivocally obvious that he would be subjected to inferior coverage on the basis of his disability. This occurred when plaintiff learned in the Spring of 1996 that his disability had been classified as "mental" rather than "physical," and that he would receive inferior coverage on the basis of that classification. Like the plaintiffs in *Ricks* and *English,* plaintiff might have avoided the effects of the discriminatory decision against him; i.e., he might have recovered within two years without ever feeling the bite of the plan's inferior coverage of "mental" disabilities. However, this possibility is irrelevant in determining when his claims of discrimination became actionable.

In light of the principles set forth in *Ricks* and *English,* plaintiff's argument that his claims were unripe for adjudication until his benefits actually stopped arriving must fail. Indeed, more than a year before his benefits ran out, plaintiff explicitly recognized that Aetna's differing treatment of mental and physical disabilities was itself an actual and

---

**1.** The Court later extended this principle to include claims brought under § 1983. *See Char-* *don,* 454 U.S. at 6.

imminent harm actionable under the ADA. *See* Plaintiff's EEOC Charge, filed July 2, 1996. In that charge, plaintiff stated:

> I am unfairly being paid disability benefits for only a 2 year duration with respect to my mental disability in accordance with the terms of Respondent's employee disability benefits plan ... By contrast, employees with physical illnesses are entitled to employee benefits under this plan until age, sixty-five [sic] ... I believe that I have been discriminated against because of my disability in violation of the Americans with Disabilities Act.

*Id.*

■ Although the statute of limitations for Lewis' ADA claims began to run in the Spring of 1996, he did not file the present action until more than a year later, on August 6, 1997. For claims brought under ADA Title I, there is an administrative exhaustion requirement which would toll the statute. However, for Title III claims, there is no exhaustion requirement. Therefore, plaintiff's EEOC charge did not toll the statute of limitations as to his Title III claim against Aetna. Accordingly, Aetna's Motion for Summary Judgment must be granted.

■ However, plaintiff's Title I claim against Kmart remains viable. A plaintiff alleging a violation of Title I must file a charge of discrimination with the EEOC within 180 days of the accrual of his cause of action. *See* 42 U.S.C. § 12117(a). Here, Kmart argues that plaintiff's cause of action accrued in 1987 when plaintiff first received the allegedly discriminatory Aetna plan. This argument is directly contradicted by *Ricks,* where the Supreme Court held that the 180–day administrative filing requirement for a plaintiff's Title VII claim begins to run only after the plaintiff has received notice of an adverse decision against him. *See Ricks,* 449 U.S. at 257. Indeed, to hold otherwise would be patently unfair, because it would deprive many plaintiffs, such as

Lewis, of a cause of action before they ever became aware that they had one.

Kmart argues that this Court has previously concluded that Lewis was subjected to discrimination when he was offered a disability policy that provided inferior coverage for mental rather than physical disabilities. *See Lewis v. Aetna Ins. Co. et al.,* 982 F.Supp. 1158, 1160 (E.D.Va.1997). Kmart's argument misses the mark. Although he may have been a victim of discrimination when he received the Aetna policy, Lewis' discrimination claim did not become ripe until the Spring of 1996, when he learned definitely that Aetna had classified his disability as "mental" and therefore limited him to inferior benefits. Before that time, Lewis' status under the policy was unclear. For example, Kmart mailed Lewis a letter on October 2, 1995, which provided specific figures anticipating Lewis' continued receipt of benefits through the year 2019, when he would turn sixty-five. The letter ambiguously concludes:

> If your disability is the result of a mental condition, benefits under this plan are limited to 30 months from the date your disability commenced, unless you are confined in a health facility at the expiration of that period.

*Id.* Neither this letter nor others Lewis received like it indicate that his particular disability would be classified as "mental" under the Aetna plan. As such, these earlier letters were insufficient to provide the final, definite notice required under *Ricks.*[2] Moreover, as plaintiff has consistently maintained throughout this litigation, his depression is the result of a chemical imbalance in the brain, and might therefore be considered a physical disability. *See, e.g.,* Plaintiff's Memorandum in Support of Motion for Preliminary Injunction at 2, and attached expert declarations. As such, there is a genuine issue as to whether his disability was "exclusively organic" in nature and therefore subject to classification as a "physical" disability under the Aetna plan.[3] Finally, plaintiff cor-

---

**2.** Plaintiff's situation may be likened to that of a person of mixed ancestry who takes employment at a company whose promotion policy openly discriminates against Hispanics. The employee knows that he has an Hispanic ancestor, but is unsure if he has enough Hispanic ancestry to be

classified as "Hispanic" under the company policy. Only when he is classified as Hispanic and subjected to discriminatory treatment under the policy can he be certain of his cause of action.

**3.** The Aetna plan provides that:

rectly argues that had he brought suit before Aetna classified his disability as mental, his claim would surely have been dismissed as unripe.[4]

Given the clear holdings of *Ricks* and *English* on this issue, this Court concludes that the 180–day period for filing an EEOC complaint on plaintiff's Title I claim began to run when Lewis received actual notice that his disability had been classified as mental. Even if we assume that "Spring of 1996" means March 1, 1996, plaintiff's July 2, 1996 filing with the EEOC is well within the 180–day period. Plaintiff's Title I claim, therefore, is not barred by either the applicable statute of limitations or the administrative exhaustion requirement.

### Continuing Violation

■ As an alternative to his ripeness argument, plaintiff argues that Aetna's practice of distinguishing between mental and physical disability constitutes a continuing violation of the ADA. Both the Ricks court and the *English* court rejected this specific argument as well. *See Ricks,* 449 U.S. at 257; *English,* 858 F.2d at 962. Aetna's decision to subject Lewis to inferior disability coverage and the actual termination of his benefit payments in accordance with that policy are not two separate acts of discrimination, as plaintiff contends. Rather, Aetna's denial of equal coverage was itself a "consummated, immediate violation [and] may not be treated as merely an episode in a 'continuing violation' because its effects necessarily carry over on a 'continuing' basis." *English,* 858 F.2d at 962. To treat Aetna's allegedly discriminatory policy as an ongoing violation "would of course effectively scuttle all timeliness requirements with respect to any dis-

crete violation having lasting effects—as presumably all do to some extent." *Id.* at 962–63. Indeed, under plaintiff's continuing violation theory, he might bring suit decades after Aetna's decision to offer inferior coverage. Such a result would, as the *English* court observed, defeat the purpose of having any statute of limitations whatsoever. Accordingly, we hold the continuing violation doctrine does not apply to the single, discrete act of discrimination at issue in this case.

### Virginia Personal Injury and Accrual

■ As a final argument, Lewis contends that because 42 U.S.C. § 1988 directs this Court to apply the most analogous state limitations period to his claims, we must also look to state law to determine when the limitations period began to run. Plaintiff argues that, following Virginia law, this Court must apply the rule of accrual used in state personal injury actions. Under that rule, a plaintiff's claim becomes actionable from the moment of injury. *See* Va.Code Ann. § 8.01–230. We disagree.

By adopting the Virginia Act's limitations period for federal disability claims, the Fourth Circuit deliberately departed from the practice of other circuits which have adopted state personal injury limitations periods. *See Wolsky,* 1 F.3d at 224. Here, plaintiff acknowledges that the Virginia Act governs the limitations period for his ADA claims. Plaintiff may not selectively adopt the limitations period of the Virginia Act but reject its accrual provisions in favor of Virginia's laws concerning personal injury. Under the Virginia Act, a plaintiff's cause of action accrues when he has notice of a violation of the applicable discrimination statute.

---

After the first twenty-four months of the period of total disability, such period shall be deemed to terminate as of any date on which the total disability is caused by any condition other than a medically determinable physical impairment.... [T]he term "medically determinable physical impairment" shall mean a physical impairment which results from anatomical or physiological abnormalities which are exclusively organic and non-psychiatric in nature and which are demonstrated by medically acceptable clinical and laboratory techniques. Aetna Group Insurance Policy at § 2(c).

4. Plaintiff cites *N.Y. Ophthalmological Soc. v. Bowen,* 854 F.2d 1379 (C.A.D.C.1988), for support. In that case, plaintiffs challenged a federal law preventing doctors from billing Medicare patients for certain services unless they had been approved in advanced by a Peer Review Organization ("PRO"). The plaintiffs claimed, *inter alia,* that PRO disapproval undermined their due process rights as patients. *Id.* at 1386. The court held that this claim was not ripe because the PROs had not yet denied any of plaintiffs' claims. Had Lewis sued before being informed that he would be subject to the two-year cutoff, his claim would have been similarly unripe.

*See* Va.Code Ann. § 51.5–46B. Accordingly, plaintiff's reliance on Virginia's personal injury statute is misplaced.

### III.

We are not unsympathetic with plaintiff's concerns that our decision today could encourage a deluge of hypothetical claims which may never ripen into actual controversies or injuries. Plaintiff's objections to the *Ricks–Chardon* rule were well stated by Justice Brennan in *Chardon,* who argued that:

> The effect of this ruling will be to increase the number of unripe and anticipatory lawsuits in the federal courts—lawsuits that should not be filed until some concrete harm has been suffered, and until the parties, and the forces of time, have had maximum opportunity to resolve the controversy.

*Chardon,* 454 U.S. at 9. Nevertheless, a majority of the Court chose to reject Justice Brennan's arguments, and we are bound by their analysis. Accordingly, and for the reasons stated above, this Court holds that Aetna's Motion for Summary Judgment as to plaintiff's Title III claim will be GRANTED, and Kmart's Motion for Summary Judgment as to plaintiff's Title I claim will be DENIED. An appropriate order will issue.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.