Center for Independence of the Disabled v Metropolitan Transp. Auth. (2020 NY Slip Op 03203)





Center for Independence of the Disabled v Metropolitan Transp. Auth.


2020 NY Slip Op 03203


Decided on June 4, 2020


Appellate Division, First Department


Gische, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 4, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta, P.J.
Sallie Manzanet-Daniels
Judith J. Gische
Barbara R. Kapnick, JJ.


153765/17 11412 

[*1]Center for Independence of the Disabled, et al., Plaintiffs-Respondents,
v
Metropolitan Transportation Authority, etc., et al., Defendants-Appellants. 504 Democratic Club, Advocates for Justice, Community Access, Lenox Hill Neighborhood House, National Center for Law and Economic Justice and New York Lawyers for the Public Interest, Amici Curiae.



Defendants appeal from the order of the Supreme Court, New York County (Shlomo Hagler, J.), entered on or about June 6, 2019, which denied the motion of defendants Metropolitan Transportation Authority, Veronique Hakim, New York City Transit Authority and Darryl C. Irick to dismiss the complaint and denied, without prejudice, the motion of defendant the City of New York to dismiss the complaint.



Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York (Allan Arffa, Gregory F. Launer and Joseph P. Kolatch of counsel), for Metropolitan Transportation Authority, Veronique Hakim, New York City Transit Authority and Darryl C. Irick, appellants.
James E. Johnson, Corporation Counsel, New York (Jeremy W. Shweder, Richard Dearing and Devin Slack of counsel), for City of New York, appellant.
Disability Rights Advocates, New York (Michelle Caiola, Torie [*2]Atkinson and Emily Seelendfreud of counsel), and Sheppard Mullin Richter & Hampton, LLP, New York (Daniel Brown of counsel), for respondents.
Dentons US LLP, New York (Sandra D. Hauser, Levon Golendukhin and Noel Y. Lee of counsel), and New York Lawyers for the Public Interest, New York (Ruth Lowenkron and Christopher Schuyler of counsel), for amici curiae.



GISCHE, J.


Plaintiffs bring this putative class action under the New York City Human Rights Laws (NYCHRL) challenging, as discriminatory, the New York City subway system's lack of accessibility to persons with certain disabilities. Plaintiffs consist of five non-profit disability rights organizations and three individuals with mobility impairments. Administrative Code of City of NY § 8-107(4)(a)(1)(a) makes it an unlawful discriminatory practice for "any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation . . . [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation" . . ."[b]ecause of any person's actual or perceived . . . disability . . . "directly or indirectly . . ." The gravamen of the complaint, filed in 2017, is that over 80% of New York City's subway stations (360 out of 427) are not equipped with any vertical accessibility, other than stairs. Stair only stations cannot be utilized by persons who use wheelchairs, scooters, walkers or those with disabilities related to muscle, joint, heart or lung function. The scarcity of accessible subways makes certain locations and neighborhoods in the City unreachable for persons with these disabilities.
Defendants consist of the Metropolitan Transit Authority, and its interim executive director, the New York City Transit Authority and its president (collectively the transit defendants) and the City of New York (CNY). Defendants are appealing the motion court's denial of their CPLR 3211 pre-answer motion to dismiss the complaint. Defendants argue the complaint should be dismissed because it is barred by the applicable statute of limitations, otherwise barred by preemption and because the dispute is nonjusticiable. CNY seeks dismissal on the additional ground that it is not a proper party because it has no control over the subway system.
Statute of Limitations
An action under the NYCHRL must be brought within three years after the discriminatory practice occurred (Administrative Code § 8-502[d]). Defendants argue that the statute of limitations accrued when the subway stations were originally built at the turn of the last century. Under the NYCHRL, however, it has long been recognized that continuing acts of discrimination within the statutory period will toll the running of the statute of limitations until such time as the discrimination ends (see Ferraro v New York City Dept. of Educ, 115 AD3d 497 [1st Dept 2014]; Batchelor v NYNEX Telesector Resources Group, 213 AD2d 189 [1st Dept 1995]; see also Jeudy v City of New York, 142 AD3d 821, 823 [1st Dept [2016]). We reject defendants' arguments that the discrimination alleged by plaintiffs is not a continuing violation, but is limited to the single act of original construction of the subway system. The lack of access to the subway system, a place of public accommodation, continues every time a person seeks to use the subway system, but is prevented from doing so based upon their physical disability.
While the continuous violation doctrine is also well recognized under the federal and [*3]state discrimination laws (see Patterson v County of Oneida, 375 F3d 206, 220 [2d Cir 2004]; Bermudez v City of New York, 783 F Supp 2d 560 [SD NY 2011]), its contours are narrower. Under federal anti-discrimination laws, the continuing violation doctrine "is triggered by continual unlawful acts, [and] not by continual ill effects from the original violation" (Hamer v City of Trinidad, 924 F3d 1093, 1099 [10th Cir 2019][internal quotation marks omitted], cert denied —US&mdash, 140 S Ct 644 [2019]). As this Court recognized in Williams v New York City Hous. Auth. (61 AD3d 62 [1st Dept 2009], lv denied 13 NY3d 702 [2009]), however, by virtue of the NYCHRL's mandate that it "be construed liberally for the accomplishment of [its] uniquely broad and remedial" purposes (Administrative Code § 8-130[a]), the reach of the continuous violation doctrine under NYCHRL is broader than under either federal or state law. A broad interpretation is consistent with a "rule that neither penalizes workers who hesitate to bring an action at the first sign of what they suspect could be discriminatory trouble, nor rewards covered entities that discriminate by insulating them[selves] from challenges to their unlawful conduct that continues into the limitation period" (Williams, 61 AD3d at 73). Thus, defendants' claimed failure to provide an accessible subway system is a continuous wrong for purposes of tolling the statute of limitations under the NYCHRL.[FN1]
Defendants' attempts to distinguish and plaintiffs' attempts to embrace the reasoning of Hamer are misplaced. Although the circuit court in Hamer held that the statute of limitations did not bar a claim that sidewalks and curb cuts failed to comply with the federal Americans with Disabilities Act and Rehabilitation Act because each day that a public provided service remained non—compliant was a new violation, the basis of the court's decision was not the continuous violation doctrine. Rather, the circuit court applied the more narrowly circumscribed repeated violations doctrine in connection with the federal anti-discrimination laws. Repeated violations doctrine treats each continuing offense during the limitation period as a new violation. Relief is limited to offenses only occurring within the limitations period. The continuous treatment doctrine, as applied under the NYCHRL, is not so narrow. The additional cases relied upon by defendants are largely inapposite, because they do not concern statutory discrimination claims in which the doctrine of a continuous violation has its own jurisprudence (e.g. New York Yacht Club v Lehodey, 171 AD3d 487 [1st Dept 2019], lv denied 33 NY3d 914 [2019][building code violation for chimney height]; Henry v Bank of Am., 147 AD3d 599 [1st Dept 2017][fraud based claims for automatically enrolling the plaintiff in credit card plan without his consent].
Preemption
Defendants argue that this action is preempted by two separate State Laws, Transportation Law § 15-b and Public Authorities Law § 1266(8).
Municipalities generally have broad authority to adopt local laws provided that they are not inconsistent with either the State Constitution or any general State law (see DJL Rest. Corp. v City of New York, 96 NY2d 91, 94 [2001]; NY Const, art IX, § 2 [c][ii]; Municipal Home Rule Law § 10[1]). It has long been recognized that under home rule, CNY has broad policing power to act in furtherance of the welfare of its citizens and that the State has not preempted local anti-discrimination laws of general application (see Matter of Levy v City Commn. of Human Rights, [*4]85 NY2d 740 [1995]; New York State Club Assn v City of New York, 69 NY2d 211, 219 [1987], affd 487 US 1 [1988]; Patrolman's Benevolent Assn. of the City of N.Y., Inc. v City of New York, 142 AD3d 53 [1st Dept 2016]), appeal dismissed 28 NY3d 978 [2016]). A local law will be preempted either where it is in direct conflict with a state statute (conflict preemption), or where the state legislature has indicated its intent to occupy the particular field (field preemption) (Garcia v New York State Dept. of Health & Mental Hygiene, 31 NY3d 601 [2018]; Eric M. Berman P.C. v City of New York, 25 NY3d 684 [2015]; DJL Rest. at 96). While these two avenues of preemption are interrelated, they present distinct and independent bases to analyze the issues implicated by the issues before us (Consolidated Edison Co. of N.Y. v Town of Red Hook, 60 NY2d 99 [1983]).
Conflict preemption occurs when a local law prohibits what would be permissible under state law, or imposes prerequisites or additional restrictions on rights under state law that inhibit the operation of the State's general laws (Garcia, 31 NY3d at 617, Eric M. Berman, P.C., 25 NY3d at 690; Zakrzewska v New School, 14 NY3d 469, 480 [2010]). The Court of Appeals, however, cautions that reading conflict preemption principles too broadly carries with it the risk of rendering the power of local governments illusory (Garcia at 617). The " fact that both the [s]tate and local laws seek to regulate the same subject matter does not in and of itself give rise to an express conflict'" (Garcia at 617, quoting Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91, 97 [1987]). Conflict preemption is generally present only "when the State specifically permits the conduct prohibited at the local level," or there is some other indication that deviation from state law is prohibited (Garcia at 617-618 [internal quotation marks omitted]). More specifically, "a local law regulating the same subject matter is deemed inconsistent with the State's overriding interests because it either (1) prohibits conduct which the State law, although perhaps not expressly speaking to, considers acceptable or at least does not proscribe . . . or (2) imposes additional restrictions on rights granted by State law" (Jancyn Mfg. Corp., 71 NY2d at 97).
With field preemption, the State may expressly articulate its intent to occupy a field. It may also do so by implication (Garcia at 618; DJL Rest. at 95). The State's intent to preempt the field may be implied from the nature of the subject matter being regulated as well as the purpose and scope of the state legislative scheme involved, including the need for state-wide uniformity in a particular field or issue (Garcia at 618; People v Diack, 24 NY3d 674, 679 [2015]). " When the State has created a comprehensive and detailed regulatory scheme with regard to the subject matter that the local law attempts to regulate, the local interest must yield to that of the State in regulating that field'" (Garcia at 618, quoting Diack at 677). State statutes do not necessarily preempt local laws, however, where the local laws only have a "tangential" impact on the State's interests. Local laws of general application — which are aimed at legitimate concerns of the local government — will not be preempted, if their enforcement only incidentally infringes on a preempted field (DJL Rest. at 97).
We hold that Transportation Law § 15-b does not preempt enforcement of the NYCHRL's disability discrimination provisions. Transportation Law § 15-b was originally enacted in 1984 and substantially amended in 1994. Insofar as relevant here, the Transportation Law currently provides for 100 specifically designated stations to be made accessible to persons with disabilities by July 2020. This law accounts for the approximate 20% of accessible stations that were in place at the commencement of this action. It also provides for the creation of a New York city accessible transportation disabled committee, which is to assist in the development of the integrated New York city accessible transportation system as outlined in the law. The Transportation Law was originally enacted as part of a compromise of pending litigation brought by advocates for the disabled community challenging the lack of accessibility in the New York City subway system (NYLS Governor's Bill Jacket L 1984 ch 498, Budget Report on Bills No [*5]10133; see Eastern Paralyzed Veterans Assn. v Metropolitan Transp. Auth., 117 Misc 2d 343 [Sup Ct, NY County 1982][EVPA]). In EPVA, the accessibility challenges were mounted under Public Buildings Law § 51, which at that time required that rehabilitation of public buildings and facilities conform to the construction code applicable to facilities for the physically handicapped [FN2]. When the action was brought, the defendants were engaged in an effort to modernize certain subway stations. Supreme Court issued a preliminary injunction, restraining the defendants from eliminating elevators from their station modernization plans, because the plaintiffs had demonstrated a likelihood that they would succeed on the merits of their claims, pending a trial on the application of the Public Buildings Law to the scope of the planned work (EPVA at 354). Consequently, the compromise reflected in Transportation Law § 15-b was not just limited to defendants making commitments for accessible public transportation, rather it also included amendment of the Public Buildings Law § 51 to exempt the subway system, so that its defendants' delayed construction plans could proceed. In 1984, the exemption was for eight years. In 1994, it was made a permanent exemption (Public Buildings Law § 51; L 1984 ch 498 § 3; L 1994 ch 610 § 1). Transportation Law § 15-b (7) expressly provides that insofar as the provisions of the law are inconsistent with provisions of any other general, special or local law, the provisions of the Transportation Law shall control. The law does not, however, prohibit the MTA from making any more than the 100 designated subway stations accessible. Other than Public Buildings Law § 51, the transit defendants are not expressly exempt from compliance with any specifically identified law. The discrimination laws are not referenced at all.
Transportation Law § 15-b and NYCHRL, when compared, reveal no conflict preemption. The NYCHRL does not prohibit what the Transportation Law permits. Rather, the Transportation Law established a base line number of subways that must be made accessible to certain mobility impaired users. It does not set a maximum number of accessible subway stations. In fact, the transit defendants themselves point out that their "aspiration" is to install elevators in many more stations than the originally designated 100 and make them accessible by 2028 [FN3]. Thus, even if plaintiffs were to prevail in their claim that under the NYCHRL additional subway stations are required to be made accessible, there would be no conflict with Transportation Law § 15-b's requirement that, at base line, 100 such stations exist by July 2020.
With respect to field preemption, there is no express provision that Transportation Law § 15-b preempts any local relating to issues of disability discrimination. The preemptive language in the statute only concerns local laws to the extent they are inconsistent with the Transportation Law. Such limiting language does not preempt every local law, provided the local law does not [*6]interfere with the objectives of the Transportation Law (see Tang v New York City Tr. Auth., 55 AD3d 720 [2d Dept 2008]). The primary objectives of Transportation Law § 15-b were to provide an accessible public transportation system for the mobility impaired residents of New York City and to allow its then delayed construction plans to go forward (Governor's Bill Jacket, L 1984 ch 498, Budget Report on Bills No 10133). These objectives are not inconsistent with the prohibition against discrimination in providing access to places of public accommodation.[FN4]
Defendants argue that the history and scope of the law evidences the legislature's implicit intent to occupy the field. In this regard we are called upon to evaluate whether the state statute is a detailed and comprehensive regulatory scheme in the relevant area (DJL Rest. at 97). Here, it is important to the analysis that the Transportation Law and the NYCHRL address entirely different areas of legislative concern. Transportation Law § 15-b provides a specific plan, at a specific point in time, to make the New York City Transit System more accessible for mobility impaired users. The Transportation Law addresses accessibility as a function of Building Law requirements. The NYCHRL, in contrast, is a comprehensive remedial anti-discrimination law of general application. It is not limited to disability discrimination claims relative to the subway system. The particular provisions rleied upon by plaintiffs concern all places of public accommodation. The Court of Appeals has recognized that the State has not preempted local laws prohibiting discrimination (see New York State Club Assn, 69 NY2d at 219). While the Transportation Law and the NYCHRL touch upon the same area of concern, to wit accessible subway stations, each law approaches it from a different vantage point. There is nothing in the Transportation Law indicating that defendants were to be exempted from any claims of disability discrimination, or that by complying with the requirements of the Transportation Law, they would be immune for all time from claims that the subway system discriminates against a protected class of protected subway users because there are obstacles impeding their access to subway stations.
In advancing these arguments, defendants contend that Transportation Law § 15-b is a highly detailed scheme with respect to the requirements for providing accessible transportation to disabled users. The Transportation Law does not refer to discrimination claims and in fact no discrimination claims were pending before the court at the time the statute was enacted as part of a litigation compromise [FN5]. The law has a sunset provision in July 2020, and otherwise contains no prohibition against defendants providing more accessible subway stations. Transportation Law § 15-b was amended in 1994 to increase the number of accessible stations from 54 to 100. The transit defendants have plans to increase the number of accessible stations beyond that required in the Transportation Law. All of this supports a conclusion that the Transportation Law was never intended to be the final word on accessibility. The fact that the legislature expressly [*7]exempted defendants from the requirements of Public Buildings Law § 51, which had been the primary statue utilized by disability advocates for mounting their challenges, suggests that had the legislature wanted to exempt the enforcement of other laws respecting facilities used by those with physical disabilities, it could have expressly done so.
Defendants' claim that this action is preempted under the Public Authorities Law is likewise rejected. The Public Authorities Law established the transit defendants and sets forth the scope of their authority to act. No one disputes that the Public Authorities law authorizes the transit defendants to acquire and operate the subway system, including the authority to construct, reconstruct, improve, maintain and operate it (Public Authorities Law § 1201 et seq.; Matter of Levy v City Commn. on Human Rights, 85 NY2d 740 [1995], supra). Public Authorities Law § 1266(8) contains an express preemption provision, but it is limited to local law "conflicting with this title or any rule or regulation of the [Transit Authority]." This limited statutory preemption only applies to laws that interfere with the accomplishment of the transit defendant transportation purposes and not to preempt the application of all local laws (Tang, 55 AD3d at 720). Compliance with the NYCHRL anti-discrimination provisions will not interfere with the transit defendants' mandate to maintain and operate the transit system (Matter of Levy, 85 NY2d at 745; Tang at 720-721; Simmons v New York City Tr. Auth., 2009 WL 2588753, 2009 US App LEXIS 17138 [2d Cir 2009]).
Justiciability
Focusing only on that aspect of plaintiffs' prayer for relief, seeking judicial imposition of a remedial plan to eliminate discrimination, defendants argue that the issues raised in this action are nonjusticiable. Defendants argue that any such remedy would be an intrusion into the decision making reserved for the executive branch of government to allocate resources and make policy decisions regarding the subway system. This argument is rejected.
At its core, justiciabilty rests on the concept of the separation of powers of the three co—equal branches of government. It developed to identify which controversies are appropriate for the exercise of judicial authority, yet it has been described by the Court of Appeals as "perhaps the most significant and least comprehended limitation upon the judicial power" (Matter of New York State Inspection, Sec. & Law Enforcement Emps. Dist. Councel 82, AFSCME, AFL-CIO v Cuomo, 64 NY2d 233, 238 [1984]). Justiciability encompasses discrete, subsidiary concepts including, inter alia, political questions, ripeness and advisory opinions (id.). The judicial branch may only exercise its power in a manner consistent with its "judicial function," upon the proper presentation of matters of a "Judiciary Nature" (id.). Oft described as an "untidy" doctrine, we have recognized that determinations of justiciability must be made on a case-by-case basis (Roberts v Health & Hosps. Corp., 87 AD3d 311, 323 [1st Dept 2011], lv denied 17 NY3d 717 [2011]).
By focusing only on one of the remedies that could be implicated by this action, defendants miss the greater import of plaintiffs' complaint. Plaintiffs seek a declaratory judgment that defendants are in violation of the NYCHRL and a permanent injunction preventing them from doing so in the future. The remedial plan they seek is nothing more than having defendants implement a nondiscriminatory plan. Where, as here, plaintiffs are seeking to enforce services and rights afforded to them under the NYCHRL, those claims are justiciable (see Matter of Klostermann v Cuomo, 61 NY2d 525 [1984]). This complaint is similar to the complaint filed in Klostermann wherein the plaintiffs sought to have the court enforce their statutory right to services and housing following their discharge from state psychiatric institutions. The Court, in finding the Klostermann plaintiffs had presented a justiciable controversy, recognized that there was nothing inherent in the plaintiffs' attempts to seek a declaration and enforcement of their rights rendering the controversy nonjusticiable (id.). Similarly, plaintiffs in this case are seeking a declaration and enforcement of the rights afforded [*8]to them under the NYCHRL. While courts must be careful to avoid fashioning orders or judgments that go beyond any mandatory directives of the constitution, statutes or regulations and which intrude upon the policy-making and discretionary decisions that are reserved to the legislative and executive branches, that limitation does not per se render a dispute nonjusticiable. We have recognized that a court can direct the State to prepare plans and programs to provide suitable treatment, which would also necessarily require the expenditure of funds, but not dictate the specific manner in which such plans and programs operate (see Campaign for Fiscal Equity, Inc. v State of New York, 29 AD3d 175 [1st Dept 2006], affd as mod 8 NY3d 14 [2006]).
CNY as a party
CNY raises a separate argument as to why this action should be dismissed as against it. While conceding that it is the owner of the subway system, it argues that it bears no responsibility for the claimed violations and has no authority to remedy them. CNY relies on the fact that it was required to and actually did lease the subway system to its codefendants. The motion court denied CNY's motion, without prejudice to renewal, following discovery. The motion to dismiss was properly denied because CNY waived that argument because it was raised for the first time in its reply brief below (see Paulling v City Car & Limousine Servs., Inc., 155 AD3d 481, 482 [1st Dept 2017]). In any event, Supreme Court properly denied CNY's motion in light of legal and factual issues that cannot be resolved on the record developed. Open issues include, at a minimum, the amount of control that CNY retains over the subway system's operation. CNY does not deny that it is responsible for a portion of MTA funding and it is unclear whether it has veto power over MTA subway projects, particularly under circumstances when capital costs exceed the amount reserved in the lease.[FN6]
Accordingly, the order of the Supreme Court, New York County (Shlomo Hagler, J.), entered on or about June 6, 2019, which denied the motion of defendants Metropolitan Transportation Authority, Veronique Hakim, New York City Transit Authority and Darryl C. Irick to dismiss the complaint and denied, without prejudice, the motion of defendant the City of New York to
dismiss the complaint, should be affirmed, without costs.
All concur.
Order, Supreme Court, New York County (Shlomo Hagler, J.), entered on or about June 6, 2019, affirmed, without costs.
Opinion by Gische, J. All concur.
Acosta, P.J., Manzanet-Daniels, Gische, Kapnick, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JUNE 04, 2020
CLERK



Footnotes

Footnote 1:In 2019, the State legislature enacted legislation that provides effective immediately that the NYSHRL shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed" (Executive Law § 300).

Footnote 2:Although the action originally included discrimination claims under the State anti-discrimination laws, by the time an injunction was issued and a subsequent compromise was reached resulting the in the Transportation Law, the discrimination claims had been dismissed with only the Public Buildings Law claims remaining (Eastern Paralyzed Veterans Assn v Metropolitan Transp. Auth., 79 AD2d 516 [1st Dept 1980]).

Footnote 3:As explained in the transit defendants' brief, in May 2018, the transit defendants announced its "aspirational" plan to make 50 more stations accessible in a five year period and then 130 more stations accessible in the five year period after that (https://www.mta.info/sites/default/files/mtaimgs/fast_forward_the_plan_to_modernize_nyct.pdf [accessed April 6, 2020]).

Footnote 4:Defendants' reliance on New York City Health & Hosps. Corp. v Council of City of N.Y., (303 AD2d 69 [1st Dept 2003], appeal withdrawn 1 NY3d 539 [2003]), does not require a different result. In that case this Court applied the same required analysis under the preemption doctrine that we apply here. In reaching a different conclusion, we did so based upon the particular laws at issue. Unlike here, the challenged local law in NYC Health & Hosps. Corp. was not a law of general applicability.

Footnote 5:See footnote 2, Eastern Paralyzed Veterans Assn. v Metropolitan Transp. Auth., 79 AD2d 516 [1st Dept 1980], supra).

Footnote 6:The record only contains the original 10 year 1953 lease and a 1995 amendment, without term, which refers to prior amendments, supplements and renewals that are not provided.