Goldenberg v Metropolitan Transp. Auth. (2024 NY Slip Op 24212)

[*1]

Goldenberg v Metropolitan Transp. Auth.

2024 NY Slip Op 24212

Decided on July 17, 2024

Supreme Court, New York County

Tsai, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on July 17, 2024
Supreme Court, New York County

Jacquelyn Goldenberg, EMELINE LAKROUT, and ATHENA SAVIDES, Plaintiffs,

against
Metropolitan Transportation Authority, JANNO LIEBER, 
 NEW YORK CITY TRANSIT AUTHORITY, RICHARD DAVEY, and CITY OF NEW YORK, Defendants.

Index No. 15096/2022

Sylvia Hinds-Radix, Corporation Counsel of the City of New York, New York City (Jeffrey S. Danowitz of counsel), for defendants.
New York Lawyers for the Public Interest, Manhattan (Christopher Schuyler, Ruth Lowenkron and Brian FitzPatrick of counsel),
Morvillo Abramowitz Grand Iason & Anello PC, Manhattan (Robert J. Anello, Karen R. King, Jorja N. Knauer, Emily Shire of counsel), for plaintiffs.

Richard Tsai, J.

In this putative class action, plaintiffs allege that defendants violated the New York City Human Rights Law (NYCHRL), in that the presence of large vertical and horizontal gaps between subway platforms and train cars, as well as the lack of safety features on platforms, [*2]deny access to the subway system to people with mobility and visual disabilities.
Instead of answering the complaint, the City of New York, which owns the subway system, now moves to dismiss the action as against it, on the grounds that it has no liability under the NYCHRL because it is an out-of-possession lessor, and that it has no control over providing the accommodations requested. Plaintiffs oppose the motion. 
On July 17, 2024, oral argument via MS Teams was publicly live-streamed and held on the stenographic record (Karen Perlman, court reporter).
BACKGROUND
It is undisputed that the City of New York (City) owns the New York City subway system (see City's memorandum of law in support at 2, 7 [NYSCEF Doc No. 23]; complaint ¶ 21 [NYSCEF Doc. No. 1]). In 1953, the Legislature created the New York City Transit Authority (NYCTA) as a public benefit corporation to acquire and operate "the transit facilities operated by [the City]" (see Public Authorities Law §§ 1201, 1202). By law, the City was authorized to enter into an agreement with the NYCTA "for the transfer to the [NYCTA], for use in the execution of its corporate purposes, of the transit facilities now owned or hereafter acquired or constructed by the city and any other materials, supplies and property incidental to or necessary for the operation thereof" (Public Authorities Law § 1203 [1] [a]). 
The lease dated June 1, 1953 (the "Lease")[FN1]
states that the City leases to the NYCTA "all of the transit facilities now owned or hereafter acquired or constructed by the City and any other materials, supplies and property incidental to or necessary for the operation of such transit facilities" and authorizes the NYCTA "to take jurisdiction, control, possession and supervision of such transit facilities, materials, supplies and property on the effective date" (NYSCEF Doc No. 22, Lease, § 2.1; see Public Authorities Law § 1203 [1] [a]). Section 16.2 of the Lease provides that, upon termination of the lease term, unless the City exercises its option to terminate, the Lease "shall continue thereafter from year to year until either the City or the Authority gives to the other one year's written notice of termination."
The Lease provides as follows:
"Capital costs of a nature not heretofore charged as operating expenses and not paid or financed through Financing Agreements or not paid or financed with funds granted to the Authority for such purposes, shall be paid by the City, or at the option of the Authority, [*3]may be paid in the first instance by the Authority, but in such event, the Authority shall be entitled to recover from the City the amount of such costs; provided, however, that the total amount of such capital costs to be paid by or recovered from the City which the Authority may incur without the approval of the Mayor in any fiscal year of the City shall not exceed $5,000,000, and that no other such capital costs to be paid by or recovered from the City may be incurred by the Authority without such approval. . . ." (Lease, § 3.1; see Public Authorities Law § 1203 [1] [b] [i]).
The Lease also provides that the NYCTA
"shall be responsible for the payment of, discharge of, defense against, and final disposition of, any and all claims, actions or judgments, including compensation claims and awards and judgments on appeal, resulting from any accident or occurrence arising out of or in connection with the operation, management and control by [NYCTA] of the Leased Property" (Lease, § 6.8)
In 1965, the Legislature created the Metropolitan Transportation Authority (MTA) as a public benefit corporation to oversee the NYCTA and other regional transportation systems (see Public Authorities Law §§ 1263, 1264). The MTA "shall consist of a chairman, sixteen other voting members, and two non-voting and four alternate non-voting members." (Public Authorities Law § 1263 [1] [a].) The governor appoints "[f]our of the sixteen voting members . . . on the written recommendation of the mayor of the city of New York." (Id.) To effectuate the MTA's purpose, Public Authorities Law provides, among other things, as follows:
"The [MTA] may do all things it deems necessary, convenient or desirable to manage, control and direct the maintenance and operation of transportation facilities, equipment or real property operated by or under contract, lease or other arrangement with the authority and its subsidiaries, and New York city transit authority and its subsidiaries. Except as hereinafter specially provided, no municipality or political subdivision, including but not limited to a county, city, village, town or school or other district shall have jurisdiction over any facilities of the authority and its subsidiaries, and New York city transit authority and its subsidiaries, or any of their activities or operations" (Public Authorities Law § 1266 [8]).
The metropolitan transportation authority capital program review board reviews the capital program plans proposed by the MTA. One of its four voting members is "appointed upon the recommendation of the mayor of the city of New York" (Public Authorities Law § 1269-a [2]). This member is "entitled to vote only with respect to bond resolutions and the capital program plans and any amendments or modifications thereof for transit facilities operated by the New York city transit authority, its subsidiaries and the Staten Island rapid transit operating authority" (id.). A capital plan is approved "by a unanimous vote of the members entitled to vote thereon" or if "no individual member of the board who is entitled to vote thereon has notified the authority in writing of his or her disapproval with a written explanation of such disapproval" within 90 days of the proposal (Public Authorities Law § 1269-b [3]).
Plaintiffs allege that defendants, in their roles as the owners and/or managers of the subway system, discriminate against persons with vision and/or mobility impairments, by [*4]permitting large gaps to exist between trains and platforms as well as by failing to implement reasonable safety features to reduce the risk of falling or being pushed onto the tracks (complaint ¶¶ 6, 11, 12, 72, 114, 115, 117). Plaintiffs seek declaratory and injunctive relief, along with reasonable attorneys' fees and costs (id. ¶¶ 121-126).

DISCUSSION
The City argues that, while owners can be held liable under the NYCHRL, the law imposes liability only on those who have control over providing the requested accommodation (the City's memo of law in support, at 6). While the City owns the subway system, the City contends that, pursuant to state law and the City's longstanding Lease with the NYCTA, control over the system's operations and facilities rests solely with the MTA and the NYCTA (see id. at 1). The City relies on cases where, under tort law, appellate courts have held that the City has no liability because it is an out-of-possession lessor (see id. at 7). The City further argues that the NYCTA assumed responsibility for any violations of the NYCHRL pursuant to Section 6.8 of the Lease (id. at 8). Lastly, the City contends that its motion should be granted because the complaint is devoid of allegations that the City has, directly or indirectly, refused, withheld, or denied an accommodation to plaintiffs in violation of NYCHRL (see id. at 10). It argues that the complaint's allegations against "Defendants" collectively are insufficient, as the Transit Defendants are independent of the City (see id.).
In opposition, plaintiffs argue that the City is liable because NYCHRL expressly applies to " an owner, . . . of any place . . . of public accommodation" (Admin. Code § 8-107 [4] [a]), and no exceptions are provided for owners that lease their property (plaintiff's memo of law in opposition, at 8). Plaintiffs point to similar provisions in the Americans with Disabilities Act ("ADA"), which have been interpreted to hold a property owner liable, without regard to the owner's control over the property (see plaintiff's memo of law, at 10). Alternatively, plaintiffs also contend that the City may be held liable as a "provider of public accommodation" (id. at 9). In any event, plaintiffs argue that, to the extent that the City's liability depends on whether it controls the subway system, even if the City's control over the subway is relevant to its liability under the NYCHRL, discovery is needed to determine the City's control, citing Center for Independence of the Disabled v Metropolitan Transportation Authority (184 AD3d 197 [1st Dept 2020]). 
In reply,[FN2]
the City argues that the NYCHRL requires that two conditions be met: status ("owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation") and conduct ("[t]o refuse, withhold from or deny . . . equal enjoyment, on equal terms and conditions") (see City's reply memo of law at 3). The City appears to argue that, because the law and the lease divest it of any control over the subway, it therefore cannot as a matter of law, have committed any conduct [*5]which constituted a discriminatory act in violation of the NYCHRL. The City also denies that it is a "provider of public accommodation," as it does not "provide" the place where subway services are made available simply by virtue of leasing its property (see City's reply memo of law at 5).
On a motion to dismiss a complaint for failure to state a cause of action, "the pleadings are necessarily afforded a liberal construction" and plaintiffs are accorded "the benefit of every possible favorable inference" (Goshen v Mutual Life Ins. Co. of NY, 98 NY2d 314, 326 [2002] [internal quotation marks and citations omitted]). The court is not permitted "to assess the merits of the complaint or any of its factual allegations, but only to determine if, assuming the truth of the facts alleged, the complaint states the elements of a legally cognizable cause of action" (Skillgames, LLC v Brody, 1 AD3d 247, 250 [1st Dept 2003] [internal citation omitted]). "A defendant is entitled to dismissal pursuant to CPLR 3211(a) (1) only if the documentary evidence 'utterly refutes the plaintiff's factual allegations, conclusively establishing a defense as a matter of law'" (Eccles v Shamrock Capital Advisors, LLC, — NY3d —, 2024 NY Slip Op 02841 [2024], quoting Goshen, 98 NY2d at 326 [2002]).
The NYCHRL provides, in relevant part:
"It shall be unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation . . .
[b]ecause of any person's actual or perceived . . . disability . . . directly or indirectly . . .
[t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation" (Administrative Code of the City of New York § 8-107 [4] [a] [1] [a]).[FN3]
When construing the NYCHRL, "[i]nterpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of the [NYCHRL], viewing similarly worded provisions of federal and state civil rights laws as a floor below which the [NYCHRL] cannot fall, rather than a ceiling above which the local law cannot rise" (Makinen v City of New York, 30 NY3d 81, 87 [2017] [internal quotation marks and citation omitted]). Because of this rule of construction and the "close overlap" between the standards governing the ADA and NYCHRL, "if a plaintiff can satisfy his or her burden under the ADA, a plaintiff will also satisfy his or her burden under . . . [NYCHRL]" (I.M. v City of New York, 178 AD3d 126, 135 [1st Dept 2019] [internal citation omitted]).
Here, the court rejects the City's argument that, notwithstanding the fact that it is the owner of the subway system, it cannot be held liable because it leases the subway system to the NYCTA. This argument contravenes a plain reading of the statute. 
It is undisputed that the subway system is place of public accommodation. The NYCHRL defines "place or provider of public accommodation" to include "places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold, or otherwise made available" (Admin. Code § 8-102).
The NYCHRL applies to "any person who is the owner, . . . lessor, . . . of any place or provider of public accommodation" (Admin Code § 8-107 [4] [a]). The NYCHRL defines "person" to include "governmental bodies or agencies" (Admin Code § 8-102). By a plain reading of the statute, the NYCHRL therefore applies to the City, which is a "person" that is the "owner" and "lessor" of a "place of public accommodation."
This plain reading of the NYCHRL is consistent with case law interpreting the ADA. Like the NYCHRL, the ADA similarly provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation" (42 USCA § 12182 [a]). The statute then defines discriminatory conduct to include, among other things,
"subject[ing] an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity" (42 USCA § 12182 [b] [1] [A] [i]).
In interpreting this provision, federal courts have held that "a landlord has an independent obligation to comply with the ADA that may not be eliminated by contract" (Botosan v Paul McNally Realty, 216 F3d 827, 833 [9th Cir 2000]; see Dunbar v Empire Szechuan Noodle House Inc., 2020 WL 2132339, *4, 2020 US Dist LEXIS 79311, *10 [SD NY, May 5, 2020, No. 18-CV-9625] [stating that "(t)he landlord is always liable for ADA compliance"]). "[C]ompliance with the ADA . . . is 'nondelegable' in that an owner cannot "insulate himself from liability for ... discrimination in regard to living premises owned by him and managed for his benefit merely by relinquishing the responsibility for preventing such discrimination to another party" (Equal Rights Ctr. v Niles Bolton Assoc., 602 F3d 597, 602 [4th Cir 2010]).
In Botosan v Paul McNally Realty, the property owners argued that the ADA discrimination action should have been dismissed as against them, because the lease assigned responsibility for ADA compliance to the tenant (216 F3d at 832). Looking at the plain language of subsection (a) of section 12182, the United States Court of Appeals for the Ninth Circuit concluded that "[t]he express terms of the ADA hold a landlord liable for noncompliance" and that the "legislative history of the ADA supports this construction of the statute" (Id.). The court then delved into the legislative history of subsection (b) of section 12182, which explains that:
"'[T]he reference to contractual arrangements is to make clear that an entity may not do indirectly through contractual arrangements what it is prohibited from doing directly under this Act.... [O]f course, a covered entity may not use a contractual provision to [*6]reduce any of its obligations under this Act. In sum, a public accommodation's obligations are not extended or changed in any manner by virtue of its lease with the other entity'" (id. at 833, quoting HR Rep. No. 101—485(II), at 104, reprinted in 1990 U.S.C.C.A.N. 303, 387).
Similarly, in Dunbar v Empire Szechuan Noodle House Inc., the federal district court rejected the landlord's argument that the ADA claims were moot as against it, because a new tenant was contractually bound to bring the property into compliance with the statute. In pertinent part, the court held that, "[i]t [was] possible that the conditions that caused Plaintiff to commence this lawsuit [would] be remedied by the new tenant, but it [was] possible that they [would] not be" and that "[t]he landlord is always liable for ADA compliance." (Dunbar, 2020 WL 2132339, *4, 2020 US Dist LEXIS 79311, *10).
Much like the ADA, the NYCHRL expressly holds the owner liable for discriminatory practices and defines discriminatory practices to include "direct[] or indirect[]" conduct (Administrative Code of the City of New York § 8-107 [4] [a] [1] [a]). Therefore, "viewing similarly worded provisions of [the ADA] as a floor below which the [NYCHRL] cannot fall" (Makinen, 30 NY3d at 87 [internal quotation marks and citation omitted]), the City, as the owner and lessor, therefore has a nondelegable duty to comply with the NYCHRL. As the City does not dispute that it owns the subway (see NYSCEF Doc No. 23, City's brief at 2, 7), it cannot escape liability by relying upon the fact that it had leased the premises.
Because the duty upon the City under the NYCHRL is nondelegable, the City's argument that it cannot, as matter of law, commit a violation of the NYCHRL because control over the subway system was leased to the NYCTA is similarly unavailing. The City made a similar argument in Coleman v City of New York (91 NY2d 821, 822 [1997]), which the Court of Appeals rejected. There, a NYCTA employee commenced an action for, among other things, violations of the Labor Law § 240 (1), which imposes a nondelegable duty upon an owner, who is "liable for a violation of the section even though the job was performed by an independent contractor over which it exercised no supervision or control" (Rocovich v Consol. Edison Co., 78 NY2d 509, 513 [1991]). 
In Coleman, the City argued that, "though technically an 'owner,' [it] lacked any ability to protect [NYCTA] employees working on the transit system because of the statutory scheme creating the [NYCTA] and establishing [the] lessor-lessee relationship" (91 NY2d at 823). The Court of Appeals "decline[d] to exempt the City—which [was] in fact the owner—from the plain word and reach of the statute, leaving that for the Legislature if it so cho[se]" (id.). Here too, the plain language of the NYCHRL holds owners and lessors liable.
To the extent that the City argues that the complaint fails to state a cause of action against the City for violation of the NYCHRL because the complaint refers to defendants collectively, this court disagrees. The complaint adequately alleges the City's involvement, by alleging that "Defendants, which own and/or operate the largest subway system in the United States, have permitted large gaps to exist between subway trains and platforms throughout the system—even at subway stations designated by Defendants as "accessible" (complaint ¶ 6; see also complaint ¶¶ 114, 117). Viewing the allegations in the light most favorable to the non-movants, the complaint sufficiently alleges that the inaction of each defendant (which includes the City) to remedy the gaps constitutes withholding or denial (either directly or indirectly) of "any accommodations, advantages, services, facilities or privileges" of a place of public [*7]accommodation, in violation of the Administrative Code § 8-107 (4) (a) (1) (a).
In any event, neither the Lease nor the Public Authorities Law upon which the City relies conclusively settles the issue of the City's control over the subway. Both indicate that the City has approval rights over certain capital costs as well as veto power over capital projects (see NYSCEF Doc No. 22, Lease, § 3.1; Public Authorities Law §§ 1203 [1] [b] [i]; 1269-a [2]; 1269-b [3]). In Center for Independence of the Disabled v Metropolitan Transportation Authority, the Appellate Division, First Department ruled that open issues about the extent of the City's control would be sufficient to warrant denial of its motion to dismiss (184 AD3d at 209). Specifically, the court stated that:
"Supreme Court properly denied [the City's] motion in light of legal and factual issues that cannot be resolved on the record developed. Open issues include, at a minimum, the amount of control that [the City] retains over the subway system's operation. [The City] does not deny that it is responsible for a portion of MTA funding and it is unclear whether it has veto power over MTA subway projects, particularly under circumstances when capital costs exceed the amount reserved in the lease." (Center for Independence of the Disabled v Metropolitan Transp. Auth., 184 AD3d at 209-210.)
As concerns "the record developed" in Center for Independence of the Disabled (id. at 209), "[t]he record only contain[ed] the original 10 year 1953 lease and a 1995 amendment, without term, which refer[red] to prior amendments, supplements and renewals that [were] not provided" (id. at 210 n 6). Here, the City supplies a composite copy of the Lease that incorporates all amendments prior to the 1995 amendment and the 1995 amendment is annexed to the Lease (see NYSCEF Doc No. 22, Lease). However, the City does not point to anything in this version of the Lease that directly resolves the issues that the Appellate Division, First Department identified in Center for Independence of the Disabled. Therefore, the City's control remains an open issue, which is an alternative ground to deny the motion.
The City's argument, that later developments in Center for Independence of the Disabled make dismissal appropriate, is unpersuasive. Nothing in the City's submissions establishes that the City is not a proper party to this action. That the parties in Center for Independence of the Disabled ultimately resolved their dispute without the City's involvement and agreed to its dismissal from the action (see Bowe affirmation ¶¶ 7, 8 [NYSCEF Doc No. 45], citing NYSCEF Doc No. 244, settlement agreement, in Center for Independence of the Disabled v Metropolitan Transp. Auth., Sup Ct, NY County, index No. 153765/2017) does not "utterly refute[]" the allegations against the City in the instant action to warrant dismissal pursuant to CPLR 3211 (a) (1) (Goshen, 98 NY2d at 326). Moreover, the settlement agreement specifically states that it is for "Settlement Purposes Only" and that it
"will not be offered, introduced, used, or considered as evidence in any judicial, administrative, or other proceeding, except to the extent necessary to obtain approval of the Agreement, or, once effective, to enforce the terms of this Agreement, and will not be filed with the Court for any other purpose" (NYSCEF Doc No. 244, settlement agreement § 29, in CID v MTA, Sup Ct, NY County, index No. 153765/2017).
For the foregoing reasons, the City's motion to dismiss is denied.
The City's time to answer the complaint is extended to ten days after service of notice of entry of this decision and order (CPLR 3211 [f]).

CONCLUSION
Accordingly, it is hereby
ORDERED that defendant City of New York's motion to dismiss is denied; and it is further
ORDERED that defendant City of New York is directed to serve an answer to the complaint within 10 days after service of a copy of this order with notice of entry; and it is further
ORDERED that counsel are directed to appear for a preliminary conference in Room 280, 80 Centre Street, New York, New York, on September 19, 2024, at 11:30 A.M.
DATE 7/17/2024
RICHARD TSAI, J.S.C.

Footnotes

Footnote 1:The Lease was amended, supplemented and extended by agreements dated April 19, 1960, March 6, 1962, March 20, 1962, October 5, 1962, April 7, 1965, March 31, 1982 and April 11, 1995. The copy of the Lease the City submits on the instant motion is a composite copy, in that the composite version reflects the provisions which were modified by amendments dated April 19, 1960, March 6, 1962, March 20, 1962, October 5, 1962, April 7, 1965, and March 31, 1982. These amendments are indicated by parentheticals and asterisks. The April 11, 1995 amendment is annexed to the Lease (see the City's Exhibit A in support of motion, Lease at 1, 34 [NYSCEF Doc No. 22]).

Footnote 2:Based on the decision and order dated June 11, 2014, which partially granted the plaintiff's motion to strike portions of the record on this motion (motion sequence number 003), the court relies on the redacted versions of the City's reply papers, "NYSCEF Doc Nos. 45 and 46, in lieu of NYSCEF Doc Nos. 29 and 30" (NYSCEF Doc No. 50 at 2).

Footnote 3:Although the complaint asserts violations of Administrative Code § 8-107 (4) (a), (15), and (17) (see complaint, ¶¶ 114-117 [NYSCEF Doc No. 1]), the parties limit their arguments to subdivision 4 (a) (1) (a) only.